**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JEFFREY-ALLEN HILL-YISRA'EL,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** <br> **5:26-cv-00005-TES** |
| **Tax Commissioner SAMUEL WADE MCCORD,** *et al.,* | |
| *Defendants.* | |

**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND
DISMISSING COMPLAINT**

Pro se Plaintiff Jeffrey-Allen Hill-Yisra'el commenced this civil action on January 7, 2026, by filing a complaint [Doc. 1] and moving for leave to proceed *in forma pauperis* ("IFP")—that is, without prepaying fees and costs. [Doc. 2]. Because the Court **GRANTS** Plaintiff's Motion for Leave to Proceed IFP [Doc. 2] and waives the filing fee, the Court must screen his Complaint. *See* 28 U.S.C. § 1915(e).

1.   **Motion for Leave to Proceed *In Forma Pauperis***

Authority for granting a plaintiff permission to file a lawsuit without prepayment of fees and costs is found in 28 U.S.C. § 1915, which provides as follows:

  [Generally], any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of

all assets such prisoner possesses[1] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). A plaintiff's application is sufficient to warrant a waiver of filing fees if it "represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004). After reviewing Plaintiff's application, the Court **GRANTS** Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*. [Doc. 2].

2. <u>**Frivolity Review**</u>

Since Plaintiff is proceeding *in forma pauperis*, § 1915(e) requires the Court to review his pleadings to determine whether they are frivolous or malicious or fail to state a claim for which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). These types of complaints are subject to sua sponte dismissal by a district court. *Id.* at 324 (noting that dismissals under § 1915(e) "are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints"). A district court may conclude that pleadings are frivolous where the allegations are "clearly baseless," "fanciful," "fantastic," "delusional," or without "an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31,

---

[1] "Despite the statute's use of the phrase 'prisoner possesses,' the affidavit requirement applies to all persons requesting leave to proceed [*in forma pauperis*]." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004).

32–33 (1992). During analysis, all factual allegations in a complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Courts, however, under § 1915(e), have the "unusual power" to "pierce the veil" of a complaint's factual allegations and dismiss claims predicated on "wholly incredible" factual contentions. *Denton*, 504 U.S. at 33; *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989).

Here, Plaintiff brings 16 claims against 13 Defendants. [Doc. 1]. All are frivolous. First, the Court has previously—and repeatedly—addressed and dismissed Plaintiff's trademark infringement claims. *See Hill-Yisra'el v. Paxton*, No. 5:24-CV-59 (CAR), 2024 WL 1773993, at *1 (M.D. Ga. Apr. 24, 2024), *appeal dismissed sub nom. Hill-Yisra'el v. Att'y Gen.*, No. 24-11823, 2024 WL 3466575 (11th Cir. July 19, 2024); *Hill-Yisra'el v. Paxton*, No. 5:24-CV-00039-TES, 2024 WL 493890 (M.D. Ga. Feb. 8, 2024), *appeal dismissed sub nom. Hill-Yisra'el v. Att'y Gen.*, No. 24-11824, 2024 WL 3535560 (11th Cir. July 25, 2024); *Hill-Yisra'el v. Ga.*, No. 5:24-cv-00040-MTT (M.D. Ga. Feb. 13, 2024) ECF No. 5. In each case, Plaintiff sued to recover damages for what he viewed as the unauthorized use of his trademarks—including a trademark of "Jeffrey Allen Hill"—by Defendants such as the State of Texas or the State of Georgia. *Paxton*, 2024 WL 1773993, at *1; *Paxton*, 2024 WL 493890, at *1. The Court dismissed Plaintiff's claims as frivolous each time.

Similarly, here, Plaintiff sues to recover damages for the use of his trademarks "Bethyah Ministries," "Achukma Nakni Chihowa Tribal Trust," and "Jeffrey Allen Hill" in "tax deeds, Sheriff's deeds, collection notices, foreclosure advertisements, assessment

records, commercial securities transactions, and property transactions."[2] [Doc. 1, p. 10]. Like in the previous cases, Plaintiff's claims regarding trademark infringement or tarnishment are "delusional" and "patently frivolous." *Paxton*, 2024 WL. 493890, at *2 (citing *Denton*, 504 U.S. at 33); *Paxton*, 2024 WL 1773993, at *2. Use of the Plaintiff's name in background checks, tax deeds, Sheriff's deeds, collection notices, foreclosure advertisements, assessment records, and the sale of foreclosed property do not violate the Lanham act or the Constitution. Neither does the use of Plaintiff's face as part of his public record in background checks. Moreover, Plaintiff's attempt to distinguish his present claims from his previous claims is unpersuasive. At the end of the day, Plaintiff is still suing Defendants for his name and/or image appearing on government documents. Accordingly, the Court **DISMISSES,** once again, all parts of Plaintiff's Complaint having to do with trademark infringement—part of Count 5, part of Count 6, all of Count 7, all of Count 8, and all of Count 15—as frivolous. The Court addresses

---

[2] To be thorough, Count 5 alleges, in part, that identification requirements for "recording property deeds titled in registered trademarks" is compelled speech and an unconstitutional taking of intellectual property. [*Id.* at ¶ 74]. Count 6 alleges, in part, that identification requirements to file and access court documents is unconstitutional. [*Id.* at ¶¶ 78–79]. Count 6 also alleges that the DDS violated the Fourth Amendment by selling Plaintiff's trademark information (his name and an image of his face) to third party brokers. [*Id.* at ¶ 82]. Count 7 alleges trademark infringement under the Lanham Act. [*Id.* at p. 25]; 15 U.S.C. §§ 1114, 1125(a). Plaintiff claims that various governmental and debt collection agencies violated the Lanham Act by using and selling his registered trademarks: his name, the name of his ministry, and the name of his tribal trust. [*Id.* at ¶ 87]. Plaintiff attempts to distinguish this claim from his previous lawsuits under the Lanham act by stating that he is not asserting infringement for "bare governmental record-keeping" but rather for "revenue-generating, fee-based, and profit-sharing activities." [*Id.* at ¶ 88]. Count 8 alleges trademark infringement under Georgia law for the same actions as Count 7. [*Id.* at pp. 27–28]. Count 15 alleges trademark dilution by tarnishment for the actions alleged in Count 7. [*Id.* at pp. 34–35].

Plaintiff's remaining allegations below. The Court warns Plaintiff that he faces potential sanctions including, but not limited to, restricted filing should he continue to file baseless suits for supposed trademark violations for anyone using his name.

Count 1 alleges "Tribal Sovereignty Violations" under the 42 U.S.C. § 1983. [Doc. 1, p. 17]. Plaintiff claims that the State of Georgia has violated the Achukma Nakni Chihowa Nation's rights. However, Plaintiff has neither pled nor provided proof that the Achukma Nakni Chihowa Nation is recognized as a tribe under federal or Georgia law. Therefore, the Achukma Nakni Chihowa Nation is not subject to any of the sovereign protections afforded to recognized American Indian Tribes. Count 1 is frivolous and **DISMISSED**.[3]

Count 2 alleges deliberate indifference to serious medical needs in violation of the Fourteenth Amendment. [Doc. 1, p. 19]. "To establish deliberate indifference to a serious medical need, a plaintiff must show (1) a serious medical need, (2) . . . deliberate indifference to that need, and (3) causation between that indifference and the injury." *Kendall v. Fulton Cnty., Ga.*, No. 1:23-CV-00416-JPB, 2024 WL 1242463, at \*4 (N.D. Ga.

---

[3] Additionally, Plaintiff citers *Worcester v. State of Ga.*, 31 U.S. 515, 8 L. Ed. 483 (1832) to support his position that states lack authority to impose laws on tribal nations or citizens. [Doc. 1, ¶ 50]. However, *Worcester* was abrogated by the United States Supreme Court in 2022. *See Okla. v. Castro-Huerta*, 597 U.S. 629, 636 (2022). Specifically, the Supreme Court stated that "[s]ince the latter half of the 1800s, the Court has consistently and explicitly held that Indian reservations are part of the surrounding State and subject to the State's jurisdiction except as forbidden by federal law." *Id.* (quoting *Organized Vill. of Kake* v. *Egan*, 369 U.S. 60, 72 (1962)).

Mar. 22, 2024) (quoting *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 940 (11th Cir. 2017)) (alterations accepted). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009)). "Alternatively, a serious medical need may be determined by whether a delay in treating the need worsens the condition." *Id.* "The essential inquiry is whether the need is one that, if left unattended, poses a substantial risk of serious harm. *Id.* (citing *Mann*, 588 F.3d at 1307).

Here, Plaintiff did not allege facts sufficient to establish a deliberate indifference claim. The Gray Police Department arrested Plaintiff "for presenting tribal identification." [Doc. 1, ¶ 56]. Jones County detained Plaintiff as a pre-trial detainee following the arrest. [*Id.* at ¶¶ 55–56]. Plaintiff alleges that he "suffers from documented medical conditions requiring treatment." [Doc. 1, ¶ 56]. He says he requested relief, but Defendants Sheriff Reece and Jones County did not provide him the requested relief. [*Id.* at ¶¶ 56–57]. These assertions are insufficient. Plaintiff has not pled that he has a serious medical condition under either of the two methods listed above, nor has he pled a harm sufficient to establish a causal connection. Therefore, Plaintiff failed to state a claim for which relief may be granted, and Count 2 is **DISMISSED**.

Count 3 alleges violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). [Doc. 1, p. 19]; 42 U.S.C. § 2000cc. Specifically, Plaintiff alleges

that Defendants burdened his religious exercise by seizing property for failure to pay

property taxes, denying religious exemptions, requiring 501(c)(3) status "contrary to

sincerely held tribal religious beliefs in ecclesiastical independence," threatening the

foreclosure of another property for failure to pay taxes, and imposing identification

requirements. [Doc. 1, ¶ 61]. None of these allegations are sufficient to state a claim

under RLUIPA, which prevents the government from:

> impos[ing] or implement[ing] a *land use regulation* in a manner that imposes
> a substantial burden on the religious exercise of a person, including a
> religious assembly or institution, unless the government demonstrates that
> imposition of the burden on that person, assembly, or institution—
>     (A) is in furtherance of a compelling governmental interest; and
>     (B) is the least restrictive means of furthering that compelling
>     governmental interest.

42 U.S.C. § 2000cc-5 (2000) (emphasis added). A "land use regulation" is "a zoning or

landmarking law, or the application of such a law, that limits or restricts a claimant's

use or development of land . . . ." 42 U.S.C. § 2000cc-5 (2000). None of the actions of

which Plaintiff complains violate RLUIPA as they are not zoning or landmarking laws

nor do they involve the application of such laws. Therefore, the alleged actions do not

fall under the scope of RLUIPA, and the Court **DISMISSES** Count 3 as frivolous.

Count 4 alleges illegal seizure under 42 U.S.C. § 1983 and the Takings Clause of

the United States Constitution. [Doc. 1, p. 20]. Specifically, Plaintiff alleges that the

seizure of a religious property titled under BethYah Ministries as part of tax foreclosure

was illegal. [*Id.* at ¶ 64]. However, the statute of limitations in Georgia for a § 1983

lawsuit alleging a violation of the Takings Clause is four years. *Fulton v. Fulton Cnty. Bd. of Comm'rs*, 148 F.4th 1223, 1236 (11th Cir. 2025). The alleged taking here occurred on April 12, 2021. [Doc. 1, ¶ 64]. Plaintiff commenced this lawsuit on January 7, 2026. [Doc. 1]. Plaintiff missed the statute of limitations by nine months. Therefore, Plaintiff's Takings Clause claim is time-barred. The Court **DISMISSES** Count 4 as frivolous.

Count 5 alleges violations of the First Amendment under § 1983. [Doc. 1, p. 22]. Plaintiff alleges violations of the free exercise clause,[4] establishment clause,[5] free speech clause,[6] and the right to peaceably assemble.[7] [*Id.* at pp. 22–23]; *see also* U.S. Const. amend. I. Plaintiff's allegations in Count 5 are frivolous. Much of what Plaintiff argues has already been decided by the United States Supreme Court. *See U.S. v. Lee*, 455 U.S. 252, 259–260 (1982). Specifically, "[t]o maintain an organized society that guarantees religious freedom to a great variety of faiths requires that some religious practices yield

---

[4] For violations of the free exercise clause, Plaintiff alleges (1) that Defendants seized property used exclusively for worship; (2) that requiring a 501(c)(3) status goes against his tribal beliefs "in ecclesiastical independence and separation of church and state;" (3) that identification requirements violate his religious conscience; (4) that it violates the free exercise clause to deny religious exemptions to his tribal worship properties while granting exemptions to other churches in the same jurisdiction; and (5) that prosecuting Plaintiff for using tribal documents violates his free exercise rights. [Doc. 1, p. 22].

[5] For violations of the establishment clause, Plaintiff alleges that requiring 501(c)(3) status for religious exemptions "creates excessive entanglement between government and religion by forcing religious organizations to seek federal tax classification as condition of state property tax relief." [Doc. 1, ¶ 73].

[6] For free speech, Plaintiff alleges that forcing him to submit a valid identification to register property deeds is compelled speech. [Doc. 1, ¶ 74].

[7] For assembly, Plaintiff alleges that denial of tribal citizenship, prosecution of him for presenting a tribal identification to a police officer, and "treating tribal sovereignty as 'fraudulent' violates freedom of political association[.]" [Doc. 1, ¶ 75].

to the common good. Religious beliefs can be accommodated . . . but there is a point at which accommodation would radically restrict the operating latitude of the legislature." *Id.* (quoting *Braunfeld v. Brown,* 366 U.S. 599, 606 (1961)). Count 5 is **DISMISSED**.

Count 6 alleges violations of the Fourth Amendment and "the constitutional right of access to courts" pursuant to § 1983. [Doc. 1, p. 23]. Specifically, Plaintiff alleges that "biometric data"[8] collection in recording property deeds and electronic filing—which he alleges is mandatory—is an unreasonable search and seizure, and an unreasonable condition on the right to access courts.[9] [*Id.* at ¶¶ 78–79]. Plaintiff appears to be challenging O.C.G.A. § 44-2-2(d) and § 44-2-39(b)(1). Section 44-2-2(d) states that "any instrument listed in paragraph (1) of subsection (b) of this Code section presented to a clerk of superior court for recording by a self-filer shall be submitted using electronic filing." Section 44-2-39(b)(1) states that

> any individual wanting to submit electronic documents for recording . . . prior to such individual submitting to a clerk of the superior court any electronic documents for recording, provide through the authority's electronic filing portal information sufficient to identify such individual. Such information may include, without limitation, a copy of the individual's driver's license, passport, military identification card, or identification card authorized under [other code sections].

---

[8] Plaintiff characterizes the requirement as a requirement for him to surrender "biometric data." [Doc. 1, ¶ 79]. However, the statutory requirement is for driver's licenses, passports, and other valid identification documents. O.C.G.A. § 44-2-39(b)(1). For the sake of clarity and to fit within the statutory framework, the Court uses "valid identification" rather than Plaintiff's "biometric data."

[9] In this instance, Plaintiff sought to record property deeds titled in BethYah Ministries and Achukma Nakni Chihowa Tribal Trust. [Doc. 1, p. 13].

Together, these statutes require a non-attorney individual seeking to file a deed, mortgage document, lien, map, or tax execution to first provide a copy of a valid identification card, and then file the document electronically.

To establish a Fourth Amendment claim, Plaintiff must show that a seizure occurred and that it was unreasonable. *Evans v. Hightower*, 117 F.3d 1318, 1321 (11th Cir. 1997). A seizure under the Fourth Amendment "occurs when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *May v. City of Nahunta, Ga.*, 846 F.3d 1320, 1327 (11th Cir. 2017) (quoting *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011)). Or, to put it more broadly, "a seizure occurs 'only when there is a governmental termination of freedom of movement *through means intentionally applied*.'" *Vaughan v. Cox*, 343 F.3d 1323, 1328 (11th Cir. 2003) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)). Neither a search nor a seizure has occurred here under the Fourth Amendment. Plaintiff has not established a reasonable expectation of privacy in his driver's license, passport, or other valid identification.[10] *See Carpenter v. U.S.*, 585 U.S. 296, 304 (2018); *see also Corbitt v. Sec'y of the Ala. L. Enf't Agency*, 115 F.4th 1335, 1350 (11th Cir. 2024) (quoting *Pryor v. Reno*, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999)). Nor has he established a reasonable expectation of privacy in his physical image. Defendants' actions did not violate the Fourth Amendment.

---

[10] After all, people are required to present these same forms of identification in order to vote in many places. *See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1355 (11th Cir. 2009) (upholding voter identification law).

Furthermore, Plaintiff's attempted connection between recording property instruments and access to the courts is tenuous at best. After all, filing a deed in the courthouse is not nearly the same as filing a lawsuit. However, the Court addresses it briefly all the same.

"Meaningful access to the courts is a constitutional right." *Standard Ins. Co. v. Riley,* No. cv619-084, 2024 WL 4720374, at *2 (S.D. Ga. Sept. 23, 2024). "To pass constitutional muster, access to the courts must be more than merely formal; it must also be adequate, effective, and meaningful." *Chappell v. Rich,* 340 F.3d 1279, 1282 (11th Cir. 2003), *cert. denied*, 540 U.S. 1219 (2004). Plaintiff's access to the courts remains adequate, effective, and meaningful despite the identification requirement to record property instruments.

First, electronic filing provides easier access to Courts, and in this case, to the county property records. *See Erdberg v. On Line Info. Servs., Inc.*, No. 2:12-cv-3883-RDP, 2013 WL 5570062, at *6 (N.D. Ala. Oct. 9, 2013) ("Rather than being protectionist, mandatory e-filing, and its associated fees, provides easier access to all attorneys practicing in the courts of this state."). Although this is electronic filing of property instruments rather than litigation materials, similar principles apply. Second, requiring submittal of valid identification does not make Plaintiff's access to the courts merely formal. After all, "[t]he right of access to the courts is neither absolute nor unconditional." *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008). "Conditions and

restrictions on each person's access are necessary to preserve the judicial resource for all other persons." *Id.* Similar to filing fees, identification requirements help reduce fraud in property instrument filings, reducing additional litigation and preserving judicial resources. Finally, Plaintiff's access to the courts has not been inhibited as evidenced by his continued filing of lawsuits. *See, e.g.*, *Hill v. Hunnicutt, et al.*, No. 5:25-cv-00496-MTT (M.D. Ga. Nov. 7, 2025). Accordingly, the Court **DISMISSES** Count 6 as frivolous.

Count 9 alleges violations of the Driver's Privacy Protection Act ("DPPA") by Defendants Moore, DDS, and Altumint. [Doc. 1, p. 28]; 18 U.S.C. §§ 2721-2725. Specifically, Plaintiff alleges that the Georgia Department of Motor Vehicles ("DMV") disclosed his personal information in violation of the DPPA. [Doc. 1, ¶ 97]. He also alleges that Defendants Moore, DDS, and Altumint violated the DPPA by accessing his private information for background checks and reports. [*Id.* at ¶ 100]. Specifically, he names "background checks, insurance screening[s], lending decisions, [and] resale for profit" as well as automated traffic enforcement—presumably a camera—as the actions that violated the DPPA. [*Id.* at ¶¶ 98, 102]. However, these actions fall under DPPA's exceptions.

"The DPPA regulates the disclosure of personal information contained in the records of state motor vehicle departments (DMVs). Disclosure of personal information is prohibited unless for a purpose permitted by an exception listed in 1 of 14 statutory subsections." *Maracich v. Spears*, 570 U.S. 48, 52 (2013). Among those exceptions are:

(1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

(2) For use in connection with matters of motor vehicle or driver safety and theft . . . .

(3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—

      (A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

      (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

. . .

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

. . .

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

. . .

(c) Resale or redisclosure.—An authorized recipient of personal information . . . may resell or redisclose the information only for a use permitted under subsection (b) . . . .

18 U.S.C. § 2721(b)(1).

      The alleged actions here all fall under the DPPA's exceptions. The background checks Plaintiff alleges are by an insurance agency and a lender. [Doc. 1, ¶ 28]. Background checks by a lender fall under exception (3) above. In running a background check, a lender is looking to see if the information provided is accurate, which includes name and driver's license number as well as things like driving or criminal record. On

the other hand, background checks by an insurance agency, along with insurance screenings and lending decisions all fall under exception (6) as part of an agency's fraud prevention and underwriting process. Next, resale falls under (c). However, the Court notes that it is unclear what "resale" Plaintiff alleges. Plaintiff alleges that "third-party commercial data broker Defendants" purchased his information from the DMV and then resold it to "lenders, insurers, employers, and other private entities." [Doc. 1, ¶ 100]. However, the only Defendants named in this action that could be considered third-party commercial data brokers are Delinquent Tax Services, Inc. and Altumint, Inc. [Doc. 1, p. 1]. But—in Plaintiff's own words—these corporations are "[p]rivate [e]ntities [p]erforming [g]overnment [f]unctions." [*Id.* at p. 7]. In other words, they contract directly with the government to perform specific tasks such as traffic control or debt collection. [*Id.* at pp. 7–8]. Therefore, the named Defendants fall under exemption (1) above, and there are no other named Defendants who could have resold Plaintiff's information. Furthermore, to the extent Plaintiff is suing the DMV for "reselling" his information, the events he has named all fall under the exception in (c).

Finally, using Plaintiff's name and likeness in automatic traffic enforcement falls under exceptions (1) and (2) because Plaintiff's information was used by a private entity carrying out the government's functions—enforcing its laws—and in connection with matters of motor vehicle and driver safety—preventing the dangers associated with

speeding. Therefore, all of Plaintiff's allegations in Count 9 fall under the exceptions of the DPPA. The Court **DISMISSES** Count 9 as frivolous.

Count 10 alleges a Civil Rights Conspiracy under 42 U.S.C. §§ 1985, 1986. [Doc. 1, p. 29]. The elements of a cause of action for civil rights conspiracy under § 1985 are "(1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) injury." *Lee v. Christian,* 221 F. Supp. 3d 1370, 1377 (S.D. Ga. 2016) (citing *United Bd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 828–29 (1983)). "As part of the second element, there must be a class-based invidiously discriminatory animus behind the conspirators' action." *Id.* (quoting *United Bd. of Carpenters,* 463 U.S. at 828–29). Here, Plaintiff alleges that Defendants' actions target Plaintiff "as an American Indian tribal leader and religious chief, constituting racial and religious class-based animus[.]" [Doc. 1 at ¶ 106]. However, beyond this conclusory statement, Plaintiff's Complaint does not contain any facts showing a racial or religious motivation behind any alleged actions.

Furthermore, to establish a conspiracy, "the linchpin . . . is agreement." *Bailey v. Bd. of Cty. Comm'rs,* 956 F.2d 1112, 1122 (11th Cir. 1992). What is the agreement here? Put simply, to do all the alleged actions in Plaintiff's Complaint.[11] [Doc. 1, ¶ 105]. In

---

[11] In an effort to show a "meeting of minds," Plaintiff specifically cites:

> (1) formal contracts between DDS and commercial data brokers, DTS and Bibb County, Altumint and Bibb County, data brokers and commercial customers; (2) information

15

other words, a coordinated effort by multiple governmental entities and private

corporations to discriminate against Plaintiff by taking his property, using his

trademarks, not recognizing his tribal identification, and not providing his organization

tax-exempt status. Since all underlying claims of these actions are dismissed, Plaintiff's

conspiracy claim cannot survive. *See Weissman v. Cheokas*, No. 1:17-cv-220(WLS), 2019

WL 13099203, at *7 (M.D. Ga. Sept. 11, 2019). Accordingly, Count 10 is **DISMISSED**.[12]

Count 11 alleges violations of the Seventh Amendment. [Doc. 1, p. 30]. The

Seventh Amendment states that "[i]n Suits at common law, where the value in

controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and

no fact tried by a jury, shall be otherwise re-examined in any Court of the United States

. . . ." U.S. Const. amend. VII. Here, Plaintiff alleges that "civil penalties" imposed under

O.C.G.A. §§ 48-3-3, 48-4-45, 48-5-359, and 48-14-18—"liens, foreclosure penalties,

---

sharing whereby McCord provides DTS access to assessment databases and DDS provides data to commercial brokers; (3) coordinated timing whereby 713 Lilly Avenue was seized April 12, 2021 and resold May 4, 2021—twenty-two days later; (4) profit-sharing whereby DTS earns commission on collections using registered trademarks and data brokers earn profit from resales; (5) pattern targeting whereby all religious properties were denied exemptions while comparator churches received pathway (A) exemptions; (6) arrest by Gray Police and detention by Jones County treating tribal citizenship as "fraudulent"; (7) DDS policies forcing denial of tribal citizenship combined with § 44-12-300 criminalizing tribal identification and arrest/prosecution for presenting tribal documents.

[Doc. 1, ¶ 108].

[12] In Count 10, Plaintiff also brings claims under § 1986 for failure to prevent discriminatory acts. However, since Plaintiff failed to establish a claim under § 1985, he cannot recover under § 1986. *See Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997) ("Section 1986 claims are therefore derivative of § 1985 violations.").

interest, costs through *non-judicial action*" as well as penalties imposed by the sheriff "administratively" and "automated [traffic] enforcement penalties imposed through administrative proceeding"—violate the Seventh Amendment. [Doc. 1, ¶ 112 (emphasis added)]. However, none of the fines or penalties Plaintiff cites are "[s]*uits at common law*." U.S. Const. amend. VII. Therefore, the Seventh Amendment does not apply, and Claim 11 is **DISMISSED** as frivolous.

Count 12 alleges violations of the Due Process Clause of the Fourteenth Amendment. [Doc. 1, p. 31]; U.S. Const. amend. XIV. Plaintiff specifically alleges that Defendant McCord, as the Bibb County Tax Commissioner, is a biased decision-maker under O.C.G.A. § 48-5-359. [Doc. 1, ¶ 119]. However, the Due Process Clause "entitles a person to an impartial and disinterested tribunal in both civil and criminal cases—or, stated differently, it imposes a requirement of neutrality in adjudicative proceedings." *Harper v. Pro. Prob. Servs. Inc.*, 976 F.3d 1236, 1241 (11th Cir. 2020) (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)). Such protection is inapplicable to the sale of property for taxes due under O.C.G.A. § 48-5-359. Therefore, Count 12 is **DISMISSED**.

Count 13 also alleges violations of the Fourteenth Amendment's Due Process Clause. [Doc. 1, p. 33]. In it, Plaintiff alleges that Defendants denied him of property without due process when they foreclosed on one property without a pre-deprivation hearing; denied religious exemption to another property "without legal analysis, evidentiary hearing, or meaningful opportunity to present evidence;" provided "only

post-deprivation review by county boards lacking judicial independence'" and threatened foreclosure on another property. [*Id.* at ¶ 124]. Of Plaintiff's allegations, there is no valid deprivation of liberty, and the only deprivation of property is the foreclosure from 2021. The statute of limitations for due-process § 1983 claims in Georgia is two years. *Pugh v. Balish*, 564 F. App'x 1010, 1012 (11th Cir. 2014). Therefore, Count 13 is time-barred and **DISMISSED** as frivolous.

Count 14 is captioned as "tortious interference with tribal religious community and property rights," but seems to be a tortious interference with relationships claim. [Doc. 1, pp. 33–34]. The "relationships" Plaintiff alleges Defendants interfered with are property rights in the foreclosed property; "contractual relationships with leaders, title companies, insurers, potential purchasers;" "tribal religious community conducting ceremonies at properties[;]" and "trademark licensing opportunities and commercial relationships." [*Id.* at ¶ 127]. Although Plaintiff is likely trying to assert tortious interference with business relations, under Georgia law:

> Tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately    caused    damage    to    the    plaintiff.

*Kirkland v. Tamplin*, 645 S.E.2d 653, 655–56 (2007). Furthermore, Plaintiff seems to be asserting a tortious interference with property rights claim. To prove such a claim, Plaintiff must show "that there is some evidence that the defendant ever interfered with the plaintiff's possessory interests in the realty." *Quasebarth v. Green Tree Servicing, LLC*, 90 F. Supp. 3d 1373, 1383 (M.D. Ga. 2015) (quoting *Tower Fin. Servs., Inc. v. Mapp*, 402 S.E.2d 286, 288 (1991)) (alterations accepted).

Regardless of the claim Plaintiff is asserting, Defendants' actions must have been wrongful. *Britt Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc., Equip. Dealers Ins., Northbrook Prop. & Cas. Ins. Co.*, 952 F. Supp. 1575, 1582 (N.D. Ga. 1996), *aff'd sub nom. Britt/Paulk v. Vandroff Ins.*, 137 F.3d 1356 (11th Cir. 1998) (tortious interference with business relations requires showing that defendant acted improperly without privilege); O.C.G.A. § 51-9-1 ("every act of another which *unlawfully* interferes with such enjoyment is a tort . . . .") (emphasis added). Here, Defendants' actions were not wrongful, but instead all squarely within—and, in the case of collection notices, mandated under—Georgia law. Therefore, Count 14 is **DISMISSED** as frivolous.

Finally, Plaintiff's Complaint contains constitutional challenges under Federal Rule of Civil Procedure 5.1. [Doc. 1, p. 36]. He challenges O.C.G.A. §§ 48-5-359, 48-3-3, 48-4-45, 40-14-18, 44-12-300, and 44-2-36 facially, and 48-5-41 as applied. [*Id.*]. First, Plaintiff's facial challenges. "In contrast with an as-applied challenge, a facial challenge . . . seeks to invalidate a statute or regulation itself." *Doe v. Fla. Bar*, 630 F.3d 1336, 1341–

42 (11th Cir. 2011) (citing *U.S. v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000)). "In a

facial challenge . . . the facts of the challenging party's case are irrelevant." *Miami Herald*

*Publ'g Co. v. City of Hallandale*, 734 F.2d 666, 674 n.4 (11th Cir. 1984). To succeed on a

facial constitutional challenge to a statute, Plaintiff must show that "no set of

circumstances under which the [law] would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745

(1987). Put simply, Plaintiff's facial challenges are frivolous. *C.f. Smith v. Fla. Dep't of*

*Corr.*, 318 F.App'x 726, 729 (11th Cir. 2008) (affirming § 1915 dismissal of facial

constitutional challenge). In the "Constitutional Challenges" section of Plaintiff's

complaint, he did not specify which statute allegedly violates which provision of the

Constitution or how. [Doc. 1, p. 36]. Instead, Plaintiff lists the Georgia statutes he seeks

to challenge, and then lists the First, Fourth, Fifth, Seventh, and Fourteenth

Amendments along with the "Supremacy Clause, Commerce Clause" and "Worchester

v. Georgia tribal sovereignty protections." [*Id.*]. Plaintiff did, however, match statutes

with constitutional provisions in his claims.

     To briefly address each, no statute Plaintiff cites facially violates the First

Amendment, nor does he appear to claim that any do. The identification requirements

laid out in O.C.G.A. § 44-2-39[13] do not violate the Fourth Amendment because there is

no reasonable expectation of privacy in the information in a motor vehicle record or

---

[13] In the "Constitutional Challenges" section, Plaintiff lists O.C.G.A. § 44-2-36, but the requirement he
summarizes immediately afterwards describes § 44-2-39, which Plaintiff listed previously.

contained on a driver's license. *See Corbitt*, 115 F.4th at 1350 (quoting *Pryor v. Reno*, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999)). The taxation and foreclosure process in O.C.G.A. §§ 48-3-3 and 48-4-45 does not violate the Fifth Amendment because this property was not taken for public use, but instead resold. There are no Seventh Amendment violations under any of the statutes Plaintiff listed because they do not involve a civil trial. There are no Fourteenth Amendment violations under O.C.G.A. §§ 48-5-359, 48-3-3, 48-4-45, or 40-14-18. There is no judicial decision-maker under § 48-5-359. Georgia's tax execution process is not unconstitutional. *See, e.g.*, *Gainesville-Hall Cnty. Econ. Opportunity Org., Inc. v. Blackmon*, 212 S.E.2d 341, 342–43 (Ga. 1975); *see also* O.C.G.A. § 48-4-45 (detailing the notice requirements and right to redeem tax foreclosed property). Traffic enforcement under § 40-14-18 does not violate the Due Process Clause. O.C.G.A. § 40-13-18(e)–(g) (detailing the notice requirements for speeding tickets, and the jurisdiction of courts to hear disputes arising under this section).

The Court already partially addressed Plaintiff's as-applied First Amendment challenge to O.C.G.A. § 48-5-41. Plaintiff challenges the "501(c)(3) status for religious exemptions" requirement under the statute. But the Supreme Court has "upheld differential treatment of § 501(c)(3) organizations against both First and Fifth Amendment challenges." *Mobile Republican Assembly v. U.S.*, 353 F.3d 1357, 1361 (11th Cir. 2003). Therefore, Plaintiff's constitutional challenges are **DISMISSED** as frivolous.

3.    <u>**Conclusion**</u>

Accordingly, the Court **GRANTS** Plaintiff's Motion for Leave to Proceed IFP

[Doc. 2]. Then, upon review of Plaintiff's complaint [Doc. 1] under 28 U.S.C. § 1915(e),

the Court **DISMISSES** it. 28 U.S.C. § 1915(e)(2)(B).

**SO ORDERED**, this 15th day of January, 2026.

<u>S/ Tilman E. Self, III</u>
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**